# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| WILLIAM CARTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-02873-TWP-MPB |
| | ) |
| SUPERINTENDENT New Castle Correctional Facility, | ) |
| | ) |
| Respondent. | ) |

## ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT

This matter is before the Court on *pro se* Petitioner William Carter's ("Carter") Petition for Writ of Habeas Corpus challenging a prison disciplinary proceeding identified as No. NCF 16-06-0028 (Dkt. 1). For the reasons explained in this Entry, Carter's Petition must be **denied**.

## I. LEGAL STANDARD

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

## II. THE DISCIPLINARY PROCEEDING

On May 28, 2016, Officer Krul wrote a Report of Conduct ("the Conduct Report") charging Carter with sexual conduct in violation of Code B-216. The Conduct Report states:

> On the above date and approximate time I Ofc. Krul and female Ofc K. Smith were conducting a major line movement doing random pat downs I then called Offender William Carter doc # 160394 for a pat down. At this time I asked Williams to remove what he was holding in his jumpsuite [sic] and [he] turned around and said ("[I]'m holding myself") as he pulled his penis out. Offender was advised of Conduct report.

Filing No. 12-1 at 1.

Carter was notified of the charge on June 6, 2016, when he received the Conduct Report. He pled not guilty to the charge, requested a lay advocate for the hearing, did not call any witnesses, but did request video evidence to show that he did not expose himself. Carter was denied the ability to view the video evidence because it was determined that doing so would jeopardize the safety and security of the facility. Officer T. Thompson reviewed the video evidence of the requested location from 5:00 to 5:30 (the incident occurred at 5:15); he completed a Video Evidence Review and summarized the video as follows: "The video . . . was reviewed . . . as the offender requested. Video shows Officers on the walk doing pat searches but I am unable to identify anyone or see any details. Camera does not record sound." (Filing No. 12-6). Officer Smith provided a witness statement in support of the Conduct Report, which stated: "I Ofc. K. Smith witnessed offender Carter #160394 expose his penis to Ofc. Krul when asked what he was holding." (Filing No. 12-5 at 1.)

A disciplinary hearing was held on June 7, 2016. Carter stated at the hearing, "I don't know, I did not do this or expose myself." (Filing No. 12-8.) Based on the staff reports, Carter's statement, the witness statement, and the video evidence, the hearing officer found Carter guilty

2

of sexual conduct. The sanctions imposed included a ninety-day earned-credit-time deprivation and a demotion in credit class.

Carter appealed to the Facility Head and the Indiana Department of Correction Final Reviewing Authority, but both of his appeals were denied. He then brought this Petition pursuant to 28 U.S.C. § 2254.

### III.  ANALYSIS

Carter raises several claims in his habeas petition. First, in Grounds 1 and 3, he argues that he was denied due process because he was not allowed to view the video evidence and that Officer Thompson lied in his video review statement when he claimed that allowing Carter to view the video would jeopardize the safety and security of the facility. Second, Carter argues that neither his statement nor the video evidence supported the hearing officer's finding of guilt; nonetheless, that evidence was relied upon to find him guilty. Third, Carter challenges the denial of his first administrative appeal.

The Respondent construed Carter's first challenge regarding the video evidence as a challenge to the sufficiency of the evidence. But the Court believes Carter's claim is more accurately construed as one challenging denial of exculpatory evidence and the resulting inability to utilize it in his defense. The Respondent submitted the video evidence to the Court for *in camera* review and supplemented their return to the show cause order, and Carter filed a supplemental reply. His Petition is now ripe for decision, and the Court will address each of his claims in turn.

### A. Video Evidence

Carter argues that he was denied due process because he was unable to view the video evidence and utilize it in his defense.[1] As set forth in the Court's previous order, "procedural due process require[s] prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). "But prison authorities who assert a security justification for nondisclosure [of video evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, 681 Fed. Appx. 494, 496 (7th Cir. 2017) (quoting *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002)). Second, "even when prison administrators have a valid justification for withholding video evidence, 'due process requires that the district court conduct an *in camera* review' to assess whether the undisclosed video is exculpatory." *Id.* (quoting *Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)).

Carter maintains that there is no possible security justification for withholding the video evidence because it would "reveal[] nothing that an offender cannot view or see on his daily movement through the facility." Filing No. 1 at 4; *see* Filing No. 19 at 6. Carters focus, however, is incorrect. The security concern offered by the Respondent is not with allowing Carter to see the content of the video recording, it is that if Carter were permitted to view the video it "would reveal the location of the video camera, which [Mr.] Carter could . . . share[] with the offender population," and this would allow inmates to "cover or destroy necessary surveillance equipment." Filing No. 16-1 at 2. This is a valid security justification for withholding the video evidence from

---

[1] Carter also refers to his claim regarding the denial of the video evidence as a claim that he was denied an impartial decisionmaker. But the basis for Carter's assertion that the decisionmaker was impartial is not that the decisionmaker was biased due to an impermissible involvement in the incident or the investigation thereof, *see Piggie*, 342 F.3d at 666-67, but that he denied Carter the video evidence. The Court therefore treats this claim as one regarding the denial of exculpatory evidence, rather than one regarding the impartiality of the decisionmaker. Even if the Court treated it as the latter, Carter has not made the necessary showing of bias to succeed on such a claim. *See id.*

Carter. *See Piggie*, 344 F.3d at 679 ("[W]e have had no trouble approving of non-disclosure [of video evidence] where prison officials have asserted a bona fide security justification, for example, that if the inmate were permitted to watch the tape, he might learn the location and capabilities of the prison surveillance system, thus allowing him to avoid detection in the future.").

Even if the foregoing was not a valid justification for withholding the video, Carter would not be entitled to the video evidence in any event because it is not exculpatory. The Court conducted an *in camera* review of the video evidence and concludes that the video summary prepared by Officer Thompson was accurate—that is, the video "shows Officers on the walk doing pat searches" but the video's view, quality, and lack of sound do now allow the viewer to "identify anyone or see any details." [Filing No. 12-6 at 1](). Simply put, the video does not show Carter (or anyone else) exposing himself or confirm that he did not expose himself; rather, the viewer cannot distinguish between individuals in the video, let alone determine whether any inmate exposed themself during the pat down searches that occurred on the video. Because of this, the video was not exculpatory. *See Jones*, 637 F.3d at 847 (noting that evidence is exculpatory if it undermines or contradicts the finding of guilty). If the video is not exculpatory, it could not have violated Carter's due process rights to prevent him from viewing it. *See id.*

For both of the foregoing reasons, Carter's claim regarding the withholding of the video evidence lacks merit.

### 2. Sufficiency of the Evidence

Carter argues that neither his statement at the disciplinary hearing that he did not expose himself nor the video evidence supports the hearing officer's conclusion that he was guilty, but yet the hearing officer relied on them in finding him guilty. Carter's argument stems from the Report of Disciplinary Hearing, on which the hearing officer checked boxes reflecting that he "relied on"

the "Statement of Offender" and "Video Evidence," among other evidence, to reach his conclusion. Filing No. 12-8. Carter is correct that neither his statement nor the video demonstrate his guilt. But he reads too much into the fact that the hearing officer checked boxes indicating that he "relied on" this evidence in reaching his conclusion. A fair reading of the report is that the hearing officer considered this evidence along with the other evidence and ultimately concluded that Carter was guilty, despite the fact that not every piece of evidence relied on proved his guilt. Given this, Carter's argument is, at best, a challenge to the sufficiency of the evidence, as he argues that at least certain of the evidence on which the hearing officer relied failed to demonstrate his guilt.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

There is certainly "some evidence" in the record supporting the hearing officer's conclusion that Carter exposed himself. Although, as Carter points out, the video evidence and his own statement do not support the conclusion that he exposed himself, the Conduct Report and the witness statement from Officer Smith both clearly constitute evidence supporting the hearing officer's conclusion that he did. The Conduct Report alone can "provide[] 'some evidence' for the . . . decision," *McPherson*, 188 F.3d at 786, and here it is corroborated by Officer Smith's

6

witness statement. Accordingly, there was sufficient evidence for the hearing officer to conclude that Carter was guilty of sexual conduct.

### 3. Administrative Appeal Process

Carter's final claim focuses on the decision rendered in his first administrative appeal by Warden Keith Butts, although the precise nature of his claim is unclear. Warden Butts' denial of Carter's first administrative appeal noted, among other things, that the Conduct Report and evidence support the charge and that there were not procedural errors. Carter appears to criticize the evidence on which Warden Butts relied—which was the same evidence on which the hearing officer relied—and the fact that he was denied access to the video evidence.

To the extent that Carter's claim simply reiterates his two claims addressed above, this claim is denied for the same reasons. Moreover, if his claim is specifically about a deficiency in the appeals process, there is no due process right to an administrative appeal, and thus any irregularities, misconduct, or errors during the administrative appeal process cannot form the basis for habeas relief. The Supreme Court in *Wolff* made clear that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." 418 U.S. at 556. The due process rights that apply, which are set forth in detail in *Wolff*, do not include any safeguards during an administrative appeal, nor even a right to appeal at all. And the procedural guarantees set forth in *Wolff* may not be expanded by the lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001). Accordingly, any alleged errors or misconduct during the administrative appeals process do not entitled Carter to habeas relief.

For these reasons, Carter is not entitled to relief on this claim.

## IV.  CONCLUSION

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Carter to the relief he seeks. Accordingly, Carter's Petition for Writ of Habeas Corpus must be **DENIED** and the action **DISMISSED**.

Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date:  8/14/2017

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

William Carter, #160394
New Castle Correctional Facility
Inmate Mail/Parcels
1000 Van Nuys Road
New Castle, Indiana  47362

Abigail T. Rom
OFFICE OF THE INDIANA ATTORNEY GENERAL
abby.rom@atg.in.gov